IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EMMA HURD, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-1752-M |
| | § | |
| BAC HOME LOANS SERVICING, LP, | § | |
| F/K/A COUNTRYWIDE HOME | § | |
| LOANS SERVICING, L.P. FOR THE | § | |
| BENEFIT OF THE J.P. MORGAN | § | |
| MORTGAGE ACQUISITION TRUST | § | |
| 2006-CW1, | § | |
| | § | |
| **Defendant.** | § | Referred for Pretrial Management |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the standing order of reference dated December 13, 2011, this case has been referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *Bank of America, N.A., Successor by Merger to BAC Home Loan Servicing, LP's Motion to Dismiss Plaintiff's Petition*, filed August 19, 2012 (doc. 7). Based on the relevant filings and applicable law, the motion should be **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

This is an action involving foreclosure of real property located at 4608 Indian Creek Drive, Balch Springs, Texas 75180 (the property). Plaintiff Emma Hurd (Plaintiff) initially filed suit against BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing for the Benefit of the J.P. Morgan Mortgage Acquisition Trust 2006-CW1 in the 160th Judicial District Court for Dallas County, Texas, on June 29, 2011. (*See* doc. 1.) On July 22, 2011, Bank of America, N.A.,

successor by merger to BAC Home Loan Servicing, LP (Defendant),[1] removed this case on the basis of diversity jurisdiction.  (*Id.*)  After removal, on August 5, 2011, Plaintiff filed an amended complaint asserting claims for breach of contract, negligent misrepresentations, fraud/fraud in the inducement, violations of the Deceptive Trade Practices Act (DTPA), negligence, promissory estoppel, unjust enrichment/quantum meruit, trespass to personalty, action to remove cloud on title, wrongful foreclosure, trespass to try title, and violations of the Real Estate Settlement Procedures Act (the RESPA).  She seeks declaratory judgment and rescission of the foreclosure sale, attorney's fees, and actual, compensatory, consequential, and exemplary damages.  (*See* doc. 6 at 12–26.)

Plaintiff claims that on January 17 and 18, 2006, she executed an adjustable rate promissory note and a deed of trust on the property.  (*Id.* at 2.)  The original holder of the note and deed of trust was Countrywide Home Loans, Inc. (Countrywide).  (*Id.*)  In November 2008, Countrywide offered Plaintiff a loan modification with a new monthly payment of $1,051.74 and allegedly advised her that getting behind on her loan payments would increase her chances of being approved for a modification during the modification process.  (*Id.* at 3.)  Plaintiff accepted, signed, and returned the modification and paid the required $1000.00 fee.  (*Id.*)

Plaintiff claims that in or about May 2010, she received an invoice from Bank of America (BOA) notifying her that she was in default.  (*Id.*)  She claims that it was unclear whether the note had been transferred to BOA, but BOA began servicing the note.  (*Id.*)  On or about July 22, 2010, Plaintiff received notice from BAC, claiming that it was going to service the loan on behalf of the note-holder.  (*Id.* at 4.)  The notice was unclear as to identity of the holder, however.  (*Id.*)  The

---

[1] Defendant explains that it is the successor by merger to BAC Home Loans Servicing, LP. (BAC) formerly known as Countrywide Home Loans Servicing, LP. (doc. 7-1 at 5.)   Plaintiff disputes that Defendant is the real party in interest in this matter but claims that discovery will be required to make this determination.  (doc. 11 at 8.)

notice stated that she owed $3,272.69, payable by August 21, 2010, promised her that other payment plans were available, and notified her that the note would be accelerated on August 21, 2010. (*Id.*)

On or about July 23, 2010, Plaintiff faxed a modification application to BAC and BOA. (*Id.*) When she contacted them by phone, they told her that the more she got behind, the more eligible she would be for what they called an "Obama" modification. (*Id.*) On or about July 29, 2010, Plaintiff received a letter from BOA notifying her that BAC serviced her home loan, and that she was not in default but was delinquent. (*Id.*) The amount she had to pay would be $1,196.01, and if payment was made after August 16, 2010, the amount would be $1,229.10. (*Id.*)

On November 17, 2010, Plaintiff received a letter on BOA's letterhead that was signed by BAC. (*Id.* at 5.) The letter stated, among other things, that BOA had reviewed her modification request and that her loan was not eligible for a Home Affordable Modification. (*Id.*) On November 22, 2010, Plaintiff received another letter from BOA that was signed by BAC. (*Id.*) The letter stated that her eligibility review could not be completed until she provided certain documents. (*Id.*) The same day, BOA sent her another letter, this time advising her that the first letter "indicated the wrong documents" and that a revised letter with the correct information was attached. (*Id.*) No such letter was attached. (*Id.*)

Plaintiff called BOA at numbers provided in the letters to obtain information necessary to determine her eligibility. (*Id.* at 5–6.) She was told that she would be given a loan modification – the only question was which one of three she would receive. (*Id.* at 6.) In December 2010, Plaintiff called BOA to check on her loan modification. (*Id.*) A male individual informed her over the phone that she had been denied the "Obama modification" but was eligible and/or approved for an "in-house modification" that was better than the "Obama modification." (*Id.*)

3

On December 15, 2010, BAC attempted for the second time to give Plaintiff notice to accelerate her note. (*Id.*) The notice was substantially similar to the letter of July 2010, except that it claimed Plaintiff owed $7,588.41, to be paid by January 14, 2011. (*Id.*) The letter allegedly failed to provide a basis or support for this arbitrary number and to comply with the deed of trust in that it did not inform Plaintiff of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale. (*Id.*)

Plaintiff claims that she was hoping by 2011 that BOA or BAC would clear up the confusion they had created regarding her eligibility or approval for a modification versus the attempted acceleration. (*Id.*) On January 24, 2011, Plaintiff received yet another letter on BOA's letterhead that was signed by BAC, stating that her loan was not eligible for a modification. (*Id.*) The next day, around 7:00 P.M., she called BOA to inquire about the conflicting letters and was put in contact with "Brittany" in the "Home Retention Department." (*Id.* at 7.) Brittany advised her that she was eligible for some "in-house" modifications, and after making some requested changes to her account, again advised her that she pre-qualified for one of three modifications. (*Id.*) She told Plaintiff that a package would be sent in the mail within 30 days confirming the new modification that would decrease her monthly payment and work out a payment plan. (*Id.*) Plaintiff believes this conversation was recorded and is in BOA's or BAC's possession. (*Id.*)

On January 26, 2011, Plaintiff received another letter from BAC thanking her for sending the financial documents to determine her eligibility. (*Id.*) This letter stated that she would hear back from BAC within 30 days as to which modification she would receive. (*Id.*) Despite the promised modification, she never heard back from BAC. (*Id.*) On February 7, 2011, Plaintiff called BOA for an update on her modification. (*Id.*) A BOA representative told her that a package should be sent

out regarding her new modification within 15 to 30 days and advised her to keep checking each week.  (*Id.*)  In the meantime, Plaintiff was not making payments to assure the modification in accordance with the alleged prior representations.  (*Id.* at 7–8.)

On February 24, 2011, Plaintiff received a letter from an entity called Reconstruct Company, N.A. (Reconstruct).  (*Id.* at 8.)  The letter claimed that Plaintiff's loan had been accelerated and that she owed $119,670.89.  (*Id.*)  The letter stated that "the name of the Creditor to whom the debt is owed" was "BAC Home Loan Servicing, L.P."  (*Id.*)  Plaintiff alleges that she had never been apprised that her note was assigned to BAC.  (*Id.*)  The letter stated that Plaintiff had 30 days to dispute the validity of the debt, and that upon request, Reconstruct would provide Plaintiff with the name and address of the original creditor.  (*Id.*)  Prior to this February 24, 2011 letter, Plaintiff had not received a notice of intent to accelerate from anyone, including Reconstruct, or notice that the debt could be cured by February 24, 2011. (*Id.*)  These notices were allegedly required by the deed of trust.  (*Id.*)

Despite the 30-day opportunity to cure noted in the letter from Reconstruct, it claimed to have accelerated the maturity of the debt and attempted to notice the property for foreclosure on March 7, 2011, only eleven days after the notice.  (*Id.*)  Plaintiff claims that prior to this notice, she did not receive an opportunity to cure and was not informed of her right to reinstate after acceleration or her right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale, all in violation of the deed of trust.  (*Id.*)

On February 21, 2011, Plaintiff allegedly sent a qualified written request to BAC.  (*Id.* at 9.) This request asked for multiple documents, disputed the amount of the alleged debt, and requested confirmation that BAC was a holder in due course of a wet ink original promissory note.  (*Id.*)

Defendant received this document on March 5, 2011. (*Id.*) On March 18, 2011, Plaintiff sent a substantially similar letter to Reconstruct. (*Id.*) On March 31, 2011, Plaintiff received a response that advised, "We will respond to your request after we have completed our investigation." (*Id.*)

During the time they were supposed to be investigating, Reconstruct was again allegedly attempting to accelerate the "debt." (*Id.*) On April 14, 2011 and May 10, 2011, Reconstruct sent Plaintiff letters substantially similar to the March 27, 2011. (*Id.*) Plaintiff claims that she was still not provided her opportunity to cure, and of her right to bring a court action and to reinstate after acceleration. (*Id.* at 9.) These omissions allegedly violated the deed of trust and the RESPA. (*Id.*)

On April 12, 2011, Plaintiff requested a postponement of the sale because of BAC's failure to answer her qualified written request. (*Id.*) On April 26, 2011, Plaintiff sent "Notice and Order to Cease and Desist" under the Texas Debt Collection Act to BAC because the amount of debt was in dispute. (*Id.*) On May 10, 2011, BAC acknowledged receipt of the Cease and Desist Letter and the prior qualified written request. (*Id.*) In a two-page letter, BAC failed to provide the information requested by Plaintiff and to provide a valid explanation of why the information requested was unavailable or could not be obtained. (*Id.* at 9–10.) Instead, it advised that it could not provide Plaintiff with the original mortgage note. (*Id.* at 10.)

During this time, Plaintiff was still waiting to receive the paperwork from BAC evidencing the modification that was promised and/or offered to her, which she had accepted in January. (*Id.*) BOA and BAC were supposed to notify her within 30 days of her new modification, but the notice never came. (*Id.*) The foreclosure of the property occurred on June 7, 2011, however. (*Id.*) The substitute trustee's deed claimed that the property sold for $85,500.00 on June 7, 2011 at 12:00 pm. (*Id.* at 10.) It also stated that the party who sold the property was "BAC Home Loan Servicing, L.P.

FKA Countrywide Home Loans Servicing, LP for the Benefits for the J.P. Morgan Mortgage Acquisition Trust 2006-CW1." (*Id.*) Plaintiff claims that she has never been given notice, as required by the deed of trust and the RESPA, that the loan was transferred to the J.P. Morgan Mortgage Acquisition Trust 2006-CW1. (*Id.*)

On July 12, 2011, Plaintiff received a letter from Defendant stating that her Note had been transferred to BOA effective July 1, 2011. (*Id.* at 11.) Plaintiff claims that the letter was confusing because on its face, "the name of the creditor to whom the debt is owed" was "JP Morgan (JPMAC 2006-CW1) G2", which is a similar but different entity than the one identified in the substitute trustee's deed. (*Id.*) Additionally, the letter stated the amount of her debt was $123,473.81, even though the property was foreclosed upon and sold for $85,000.00 on June 7, 2011. (*Id.*)

Plaintiff claims that the letter evidences that the foreclosure was wrongful because different entities allegedly owned the property at the time of foreclosure, there was no credit of $85,000.00 on the debt after foreclosure, and the full note was still due and payable as alleged in the second letter. (*Id.*) Plaintiff claims that contrary to their representations, BAC and/or BOA failed to process and complete the modification of the note. (*Id.*) They also affirmatively misrepresented facts and induced her to act in a certain manner when she would not otherwise have done so. (*Id.*) Plaintiff claims that because of her reliance on the promises, she has had to hire outside services in order to try and clear up the confusion, has experienced high levels of stress and mental anguish, and has suffered monetary damages. (*Id.* at 11–12.) She also alleges that her credit has been negatively affected. (*Id.* at 12.) Plaintiff also claims that she did not receive any notice about the change in loan servicer or about the sale or transfer of her note, as required under the deed of trust and the RESPA. (*Id.* at 3–4.)

Defendant now moves to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (doc. 7.)  Plaintiff filed her response (doc. 11), Defendant filed a reply (doc. 12), and the motion is now ripe for consideration.

## II.  RULE 12(b)(6) STANDARD

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the pleadings.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the miscon-

duct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 129 S. Ct. at 1950–51.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. Pleadings in the 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins*, 224 F.3d at 499 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). When a party presents "matters outside the pleading" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of the motion to dismiss. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). However, "[i]f . . . matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56", and "[a]ll parties must be given a

reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, Defendant has attached a copy of the May 2010 notice of default, the substitute trustee's deed, the February 2011 qualified written request, and a Dallas County Appraisal District Residential Account Detail. (*See* docs. 8, 8-1.)[2]  While not attached to Plaintiff's amended complaint, the first three documents are considered part of the pleadings because they are referred to in the amended complaint and are central to the claims.  The fourth document is a matter of public record that can be judicially noticed in considering a 12(b)(6) motion. *See* Fed. R. Evid. 201(b)(2) (a court may take judicial notice of a fact when "it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").  Because the documents attached to the motion to dismiss are either considered part of the pleadings or are subject to judicial notice, there is no need to convert the motion to dismiss into a motion for summary judgment.

## III.  BREACH OF CONTRACT

Defendant argues that Plaintiff's breach of contract is subject to dismissal because it is factually unsupported.  (doc. 7-1 at 8.)

The essential elements of a breach of contract claim in Texas are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450

---

[2] Defendant has attached new evidence to its reply in support of its motion to dismiss but did not seek leave to do so. Because allowing the evidence would deprive Plaintiff of a meaningful opportunity to respond, the evidence has not been considered. *See Spring Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D.Tex. 1991) (Fitzwater, J.) ("where a movant has injected new evidentiary materials in a reply without affording the non-movant an opportunity for further response, the court still retains the discretion to decline to consider them").

(Tex. App.—Houston [14th Dist.] 2005, pet. denied)).  Plaintiff bases her breach of contract claim

on the alleged breach of the note, breach of the deed of trust, breach of the 2008 modification, and

breach of the promise to provide her with a second modification. (doc. 6 at 4, 13.)

## A.  Breach of the Note

Plaintiff alleges that Defendant breached the note when it failed to give her notice of the

changing loan payment in February 2009. (doc. 6 at 13.)  The note requires the holder to deliver or

mail to the debtor a notice of any changes in the interest rate and amount of monthly payments

before the effective date of any change.  (*Id.* at 29.)  These facts sufficiently allege that a breach of

the note occurred but fail to show that Defendant was the responsible party.  Although there are no

allegations that Defendant was the holder of the note or was servicing her loan at the time of the

alleged breach, Plaintiff contends that she never received proper notice of the note's transfer or sale

as required by the note itself and federal law and therefore does not know who was servicing her

loan at the time of the alleged breach, but that she was dealing with BOA and BAC regarding the

loan at a later time.  (*Id.* at 3–4.)  These allegations, when viewed in the light most favorable to

Plaintiff, are sufficient to state a plausible claim for relief that should be allowed to proceed through

discovery.

## B.  Breach of the Deed of Trust

Plaintiff also alleges that Defendant breached the deed of trust when it failed to provide the

notice of transfer and provided improper notices of acceleration.  (*See* doc. 6 at 3–4, 13.)

### 1.  Failure to Provide Notice of Transfer

Plaintiff first alleges that Defendant breached the deed of trust when it failed to give her

proper written notice regarding the transfer of loan services and transfer of ownership of her note

as required by the deed of trust and the RESPA.  (*See* doc. 6 at 3–4.)  She cites to paragraphs 16 and

20 of the deed of trust.  (*See* doc. 11 at 12–13; doc. 6 at 41–42.)  Paragraph 16 states that "all rights

and obligations contained in this Security Instrument are subject to any requirements and limitations

of Applicable Law."  (*See* doc. 6 at 41.)  Paragraph 20 states that in the event of a change,

"Borrower will be given written notice of the change", including a statement of the new names and

addresses, the new addresses to which payments should be made and "any other information the

RESPA requires in connection with a notice of transfer of servicing."  (*See id.* at 42.)  Plaintiff has

sufficiently alleged this aspect of her claim.

      2.  <u>Improper Acceleration Notice</u>

      Plaintiff also alleges that Defendant breached paragraph 22 of the deed of trust when it failed

to properly provide her with notice of her right to reinstate after acceleration and her right to bring

a court action to assert the non-existence of a default or any other defense to acceleration and sale.

(*See* doc. 6 at 13, 43.)  These facts are sufficient to plead a claim for the breach of the deed of trust.

Defendant does not dispute the sufficiency of the pleadings, however, arguing instead that Plaintiff's

allegations are in direct conflict with the content of the notices she received, which contain notices

of her right to reinstate and her right to bring a court action.  (*See* doc. 7-1 at 10–11; doc. 8-1 at 3.)

Defendant points to language in the May 2010 notice from BAC notifying Plaintiff of her right to

cure the default and to bring a court action.  (*Id.*)  Plaintiff argues that the right to cure does not

equal a right to dispute, as the two terms are used differently in paragraph 19 of the deed of trust.

(doc. 11 at 13–14.)  Plaintiff correctly points out that such a disputed issue of fact is not

appropriately decided at this procedural juncture.  The motion to dismiss Plaintiff's claim for the

breach of the deed of trust should be denied.

## C.  Breach of the 2008 Modification

Plaintiff alleges that Defendant breached the terms of the 2008 modification by charging more each month than was promised at a fixed rate.  (doc. 6 at 13.)  Defendant again argues that there are no allegations of its involvement with the 2008 modification agreement.  (doc. 7-1 at 8.) As before, the issue of whether or not Defendant was involved with the 2008 modification agreement is an issue of disputed fact that should be allowed to proceed through discovery, especially since there are allegations that Plaintiff was dealing with BOA and BAC with respect to the loan later on in time, and that the note was transferred without providing Plaintiff the required notices of transfer.[3]  The motion to dismiss Plaintiff's claim for the breach of the 2008 modification should be denied.

## D.  Breach of the Promise to Modify

Finally, Plaintiff claims that Defendant breached its promise to provide her with a second modification.  (doc. 6 at 13.)  She specifically alleges that when she faxed a modification application to BAC and BOA on July 23, 2010, she was informed that the more she got behind on her loan payments, the more eligible she would be for an "Obama modification."  (*Id.* at 4.)  She alleges that the BOA representatives told her over the phone on at least four occasions that she would be given, or had been found eligible for, a loan modification.  (*Id.* at 6–7.)  On two of these occasions, a representative allegedly informed her that a package would be sent in the mail confirming the new

---

[3] Defendant raises additional grounds for dismissal in their reply brief, arguing that Plaintiff has failed to allege any facts regarding the terms of the 2008 modification agreement, how Defendant breached this contract, and how she was damaged. (doc. 12 at 3.) Since Defendant raised these arguments for the first time in its reply briefs, it deprived Plaintiff of the opportunity to respond.  These arguments will therefore not be considered.  *See Spring Indus.*, 137 F.R.D. at 239 (noting practice of declining to consider arguments raised for the first time in a reply brief because non-movant should be given a fair opportunity to respond to the motion) (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F.Supp. 758, 772 (N.D.Tex. 1990)).

modification.  (*Id.* at 7.)   Plaintiff also alleges that she received a letter from BAC on January 26, 2011, stating that she would hear back within 30 days as to which modification she would receive. (*Id.*)  Finally, Plaintiff alleges that while waiting on the modification to arrive, she did not make any payments on her loan, in accordance with prior representations by BOA to assure a modification. (*Id.* at 7–8.)

Defendant does not assert that these allegations fail to state a claim.  Instead, it raises the statute of frauds defense to the claim, arguing that the claim arises from alleged oral statements that purportedly modify an existing contract governed by the statute of frauds.  (doc. 7-1 at 9–10.) Plaintiff responds that the promissory estoppel exception to the statute of frauds applies in this case. (doc. 11 at 14–15.)  She also argues that the statute of frauds defense and its exceptions should not be considered at this stage of the proceedings.  (*Id.*)  Defendant counters that Plaintiff's own recitation of the facts precludes application of the promissory estoppel exception to the statute of frauds.  (doc. 12 at 4–5.)

"Promissory estoppel is a narrow exception to the statute of frauds."  *Schuhart v. Chase Home Fin., L.L.C.*, 2006 WL 1897263, at *4 (S.D. Tex. July 10, 2006) (citing *Trammel Crow Co. v. Harkinson*, 944 S.W.2d 631, 636 (Tex. 1997)).  To establish promissory estoppel, a plaintiff must establish: (1) a promise; (2) foreseeability of reliance on the promise by the promisor; and (3) substantial detrimental reliance by the promisee.  *See Metropolitan Life Ins. Co. v. Haden & Co.*, 158 F.3d 584, 584 (citing *English v. Fischer*, 660 S.W.2d 521, 534 (Tex. 1983)).  "To invoke promissory estoppel, the promisee must show that the promisor promised to sign a written agreement that complied with the statute of frauds."  *See Schuhart*, 2006 WL 1897263, at *4 (citing *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982)).  "Moreover, the agreement which was the subject of the

oral promise must be in writing at the time the oral promise to sign was made." *See id.* (citing *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 769 (5th Cir. 1988); *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 438 (Tex. App.—Dallas 2002, no pet.)).

Defendant points out that Plaintiff's own recitation of the facts indicates that there was no agreement in writing at the time the alleged promises were made.  (doc. 12 at 4.)  According to her complaint, a representative told her that she "prequalified for one of the three modifications" and "that a package would be sent in the mail within thirty days confirming the new modification." (doc. 6 at 7.)  She also received a letter stating that she would hear back from Defendant within 30 days as to which modification she would receive.  (*Id.*)  Plaintiff alleges that she never heard back from the representatives.  (*Id.*)  Based on these allegations, Defendant only told Plaintiff that she would be given or was eligible for a loan modification and never promised to sign an existing written agreement.  Plaintiff's claim for breach of a promise to modify should be dismissed with prejudice. *See Deuley v. Chase Home Fin.*, LLC, 2006 WL 1155230, at *4 (S.D. Tex. Apr. 26, 2006).

## IV.  PROMISSORY ESTOPPEL

Defendant argues that the Plaintiff's promissory estoppel claim is barred by the statute of frauds because she seeks to enforce an unidentified oral promise.  (doc. 7-1 at 14–15.)

Although normally a defensive theory, promissory estoppel is also available as a cause of action to a promisee who has reasonably relied to his detriment on an otherwise unenforceable promise.  *See Gold Kist, Inc. v. Carr*, 886 S.W.2d 425, 431 (Tex. App.—Eastland 1994, pet. denied); *Kelly v. Rio Grande Computerland Grp.*, 128 S.W.3d 759, 769 (Tex. App.—El Paso 2004, no pet.). To establish a promissory estoppel claim, "the promise must be a promise to sign an already existing written agreement that would itself satisfy the statute of frauds."  *See George-Baunchand v. Wells*

*Fargo Home Mortg., Inc.*, 2011 WL 6250785, at * 8 (S.D. Tex. Dec. 14, 2011) (citing *Ellen v. F.H. Partners, LLC*, 2010 WL 4909973, at *5 (Tex. App.—Austin Dec.1, 2010, no pet.)).

Since there are no allegations that Defendant promised to sign an existing written agreement, Plaintiff's promissory estoppel claim should be dismissed with prejudice.

## V.   UNJUST ENRICHMENT/ QUANTUM MERUIT

Defendant argues that Plaintiff cannot recover in quantum meruit because an express contract covers the subject matter at issue.  (*See* doc. 7-1 at 15–16.)

Quantum meruit is a theory of recovery based on principles of unjust enrichment.  *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985).  The elements of quantum meruit are that: (1) Plaintiff rendered valuable services or materials; (2) the services were rendered to the defendant; (3) the defendant accepted, used, and enjoyed the services and materials; and (4) the circumstances reasonably notified the defendant that the plaintiff expected compensation for the services or materials.  *Id.* (quoting *City of Ingleside v. Stewart*, 554 S.W.2d 939, 943 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e)).

Quantum meruit "is an independent cause of action that allows recovery when there is no express contract covering the services rendered."  *Nart v. Open Text Corp.*, 2011 WL 3844216, at *4 (W.D. Tex. Aug. 29, 2011) (citing  *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683–84 (Tex. 2000)).  "Nevertheless, a party to a contract may seek alternative relief under both contract and quasi-contract theories."  *Woodcock v. Chase Home Fin., LLC*, 2012 WL 393260, at *3 (citing *In re Kellogg Brown & Root Inc.*, 166 S.W.3d 732, 740 (Tex. 2005)); *see also Tatum v. Tatum*, 606 S.W.2d 31, 33 (Tex. App.—Corpus Christi 1980) ("[T]here certainly is nothing to prevent plaintiff from pleading alternative theories of express contract and quantum meruit").

Here, Plaintiff has pled the quantum meruit/unjust enrichment claim as an alternative claim in case the court or the fact-finder finds no contract existed pursuant to the modification agreements. (*See* doc. 11 at 24.)  Plaintiff's quantum meruit claim should therefore be allowed to proceed. *See Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F.Supp.2d 680, 704 n.5 (S.D. Tex. 2011) (citing *Tatum*, 606 S.W.2d at 33).[4]

## VI. NEGLIGENT MISREPRESENTATION[5]

Defendant argues that the statements forming the basis of Plaintiff's negligent misrepresentation claim do not constitute negligent or false representations, and that the claim is precluded by the economic loss doctrine.  (doc. 7-1 at 11–12.)

### A.  Sufficiency of Allegations

A claim for negligent representation under Texas law consists of four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.  *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391 (5th Cir. 2005); *see also Nazareth Int'l. Inc. v. J.C. Penney Co.*, 287 S.W.3d 452, 460 (Tex. App.—Dallas 2009, pet. denied).

The amended complaint lists 25 false representations that Defendant allegedly made to Plaintiff.  (doc. 6 at 15–16.)  Among other things, she alleges that Defendant repeatedly misled her

---

[4] Defendant's motion does not challenge the sufficiency of the allegations underlying the unjust enrichment/quantum meruit claim.

[5] Although Plaintiff's amended complaint asserts misrepresentation and negligent misrepresentation claims together, the misrepresentation claim is actually a fraud by affirmative misrepresentation claim, based on its elements.  It will therefore be addressed as a fraud claim.

with false information regarding the possibility of obtaining a loan modification and about her eligibility of the loan modification, and that she relied on these representations to her detriment. As a result, she had to hire debt counseling services and attorneys, suffered mental anguish and other damages, including out-of-pocket expenses, and experienced foreclosure. (*Id.* at 16, 23–24.) Taken as true, Plaintiff's allegations could plausibly entitle her to relief. *See Smith v. CitiMortgage, Inc.*, 2012 WL 629058, at *6 (E.D. Tex. Feb. 27, 2012).

**B. Economic Loss Doctrine**

The economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (citing *Sw. Bell. Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991)). The rule is applicable to a claim for negligent misrepresentation in Texas. *See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998); *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442–43 (Tex. 1991). "In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: 1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and 2) whether the injury is only the economic loss to the subject of the contract itself." *Stanley Indus. of S. Fla. v. J.C. Penney, Corp., Inc.*, 2006 WL 2432309, at *5 (N.D. Tex. Aug. 18, 2006) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 45–47 (Tex. 1998)); *see also DeLanney*, 809 S.W.2d at 494–95.

1. Duty Imposed by Law

Defendant essentially argues that a mortgagor and mortgagee lack the "special relationship" giving rise to a duty in tort independent of their contract. (doc. 7-1 at 11–12.) Despite the apparent

nonexistence under Texas law of a "special" or fiduciary relationship between a mortgage servicer and borrower, or a lender and borrower, a lender may still owe a borrower the duty to exercise reasonable care to avoid a foreseeable risk of injury to the borrower.  *See In re Thrash*, 433 B.R. 585, 597–98 (N.D. Tex. 2010).  Where there has been no clear duty created under case law, the question of whether a legal duty exists is based upon the circumstances.  *See id.*; *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999).  In deciding whether to impose a duty, a court must balance "the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant."  *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 289 (Tex. 1996).

This district has held that even without a special relationship giving rise to a duty of care, there is always a duty to correct one's own prior false or misleading statement.  *See Nazareth Int'l, Inc. v. J.C. Penney Corp., Inc.*, 2005 WL 1704793, at *6 (N.D. Tex. July 19, 2005) (citing *Trustees of the Nw. Laundry & Dry Cleaners Health & Welfare Trust Fund v. Burzynski*, 27 F.3d 153, 157 (5th Cir. 1994)).  Plaintiff claims that Defendant made false and misleading representations to her without exercising reasonable care and competence.  If these allegations are true, then Defendant had a duty to correct what it had represented to Plaintiff.  *Id.*  Even if it did not, it could be determined based on a fact-intensive inquiry at a later stage in the proceedings that Defendant owed Plaintiff a duty to exercise reasonable care to avoid a foreseeable risk of injury to her.  *See In re Thrash*, 433 B.R. at 597–98.

2. <u>Nature of Injury</u>

Defendant also asserts that Plaintiff only complains of economic losses unaccompanied by

harm to her body or person. (*See* doc. 7-1 at 11–12.) Plaintiff alleges that she relied on the alleged

representations to her detriment, resulting in her hiring debt counseling services and attorneys and

suffering mental anguish and other damages, including out-of-pocket expenses. Since she seeks out-

of-pocket expenses incurred in reliance on the alleged representations, the injury alleged is over and

above the economic loss to the subject matter of the note and deed of trust and is sufficient to avoid

dismissal at this stage of the proceedings. As noted, a plaintiff is only prohibited from recovering

damages constituting the benefit of her contract with the defendant and may recover damages

suffered in reliance upon a negligent misrepresentation. *See Sloane*, 825 S.W.2d at 442–43

(adopting and discussing Restatement (Second) of Torts § 552B); *see also Nazareth*, 2005 WL

1704793, at *8 (denying motion to dismiss where it was possible that Plaintiff could prove that

alleged injuries were independent from the subject matter of the contract). Given her factual

allegations, Plaintiff's claim is not barred by the economic loss doctrine and is not subject to

dismissal at this time.

## VII.  FRAUD, FRAUD IN THE INDUCEMENT, NEGLIGENCE, TRESPASS TO PERSONALTY

Defendant argues that Plaintiff's claims for fraud, fraud in the inducement, negligence, and

trespass to personalty are also precluded by the economic loss rule. (doc. 7-1 at 12–13.) It reasons

that Plaintiff's alleged injury arises out of the note and deed of trust and limits her to recover under

those contracts alone. (*Id.* at 13.) Defendant provides only a general overview of the economic loss

rule, however, and does not show how the rule is applicable to each of the claims. (*See id.*)

First, Defendant does not address relevant case law holding that the economic loss rule does

not bar fraud and fraudulent inducement claims. *See Gruber v. Deuschle*, 2002 WL 523957, at *7

(N.D. Tex. Apr. 5, 2002) (citing *Formosa Plastics USA*, 960 S.W.2d at 47) (fraudulent inducement

claims are not subject to the economic loss rule under Texas law); *Cardinal Health Solutions, Inc. v. Valley Baptist Med. Ctr.*, 2009 WL 150942, at *20 (S.D. Tex. Jan. 21, 2009) (holding that the economic loss doctrine did not bar a fraudulent misrepresentation claim because the parties to the contract had an independent duty not to commit the intentional tort of fraud); *Experian Info. Solutions, Inc. v. Lexington Allen, L.P.*, 2011 WL 1627115, at * 12 (E.D. Tex. Apr. 7, 2011) (holding that the economic loss rule did not apply to fraud claims, including claims for fraud in the performance and fraudulent omission).  Second, Defendant has not provided, nor has the Court found, any authority applying the economic loss rule to a claim for trespass to personalty.  Third, since the filing of this motion, "the Supreme Court of Texas has issued an opinion reasoning that a bright line rule barring negligence actions for purely economic losses is too broad."  *See Club Escapade 2000, Inc. v. Ticketmaster, L.L.C.*, 2011 WL 5976918, at *8 (W.D. Tex. Nov. 29, 2011) (citing *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418–19 (Tex. 2011)).  That court explained that it had applied the economic loss rule in only two specific situations — "cases involving defective products or failure to perform a contract" — and that outside these situations, the operation of the economic loss rule was not well mapped.  *See Sharyland*, 354, SW.3d at 418–19.  Finally, since the negligence and negligent misrepresentation claims are based on substantially the same allegations, for the same reasons discussed with respect to the negligent misrepresentation claim, the negligence claim should not be held barred by the economic loss rule at this procedural juncture.  The motion to dismiss Plaintiff's claims for fraud, fraud in the inducement, negligence, and trespass to personalty should be denied.[6]

---

[6] In its reply brief, Defendant raises new grounds for dismissal of Plaintiff's claims for fraud and fraud in the inducement, arguing that the allegations with respect to these claims have failed to meet the heightened pleading requirement of Fed. R. Civ. P. 9(b).  Because Defendant never challenged the sufficiency of the allegations underlying these claims in its motion, these new arguments will not be considered.  *See Spring Indus.*, 137 F.R.D. at 239.

## VIII.  DECEPTIVE TRADE PRACTICES ACT

Defendant argues that Plaintiff's claim under the DTPA is without merit because she is not a "consumer" as defined by the DTPA.  (doc. 7-1 at 13–14.)

The elements of a cause of action under the Texas Deceptive Trade Practices Act ("DTPA") are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages."  *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing Tex. Bus. & Com. Code § 17.50(a)(1)).  To qualify as a consumer, "a person must have sought or acquired goods or services by purchase or lease" and "the goods and services purchased or leased must form the basis of the complaint."  *Cameron v. Terrell & Garrett*, 618 S.W.2d 535, 539 (Tex. 1981).  Since the lending of money is not a good or service, a borrower whose sole objective is to get a loan does not become a consumer under the DTPA.  *Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169 (Tex. 1980)).  However, a borrower may become a consumer if he or she seeks to acquire goods or services with the loan and the goods or services form the basis of his or her DTPA complaint.  *See id.* (citing *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex. 1983); *Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382 (Tex. 1982)).

Other than the conclusory allegation that she is a consumer under the DTPA, Plaintiff's amended complaint fails to specify any allegations in support of her alleged consumer status.  (*See* doc. 6 at 18.)  She argues in her response brief that she is a consumer because she purchased services from a loan servicer in the form of the original loan modification and sought financial advice on when and where to obtain a modification, and how to structure the financial arrangements of the

22

modification.   (doc. 11 at 20.)   "Although one who borrows money to buy a house can be a consumer under the DTPA because that person's objective is to buy a home, subsequent actions related to mortgage accounts—for example, extensions of further credit or modifications of the original loan—do not satisfy the 'goods or services' element of the DTPA." *Swim v. Bank of Am.*, 2012 WL 170758, at * 6 (N.D. Tex. Jan. 20, 2012) (citing *Broyles v. Chase Home Fin.*, 2011 WL 1428904 (N.D. Tex. April 13, 2011)) (quotation marks omitted).   Because Plaintiff is not a consumer vis-à-vis her claim against Defendant, her DTPA claim should be dismissed with prejudice.

## IX.  WRONGFUL FORECLOSURE

Defendant argues that Plaintiff's wrongful foreclosure claim fails because she has not plead a grossly inadequate price resulting from a procedural defect in the foreclosure proceedings.   (doc. 7-1 at 17–19.)

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, or unfairness in the conduct of a foreclosure sale.   *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)).   "Under Texas common law, a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property." *Matthews v. JPMorgan Chase Bank, NA*, 2011 WL 3347920, at *2 (N.D. Tex. Aug. 1, 2011) (citing *Am. Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 587 (Tex. 1975)).   "The elements of a wrongful foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.); *accord Pollett v. Aurora Loan Servs.*, 2011 WL 6412051, at *1 (5th Cir. 2011). "A claim for 'wrongful

foreclosure' is not available based merely on showing a defect in the foreclosure process; it is also necessary that there be an inadequate selling price resulting from the defect." *Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, J.)

Although Plaintiff alleges that there were procedural defects in the foreclosure sale, she alleges only that the foreclosure sale was not commercially reasonable and does not allege that the property was sold for a grossly inadequate price.  (*See* doc. 6 at 22.)  Moreover, she does not allege a causal connection between the alleged defects in the foreclosure sale and any grossly inadequate selling price.  (*See id.*)  Her wrongful foreclosure claim should therefore be dismissed for failure to state a claim upon which relief can be granted.  *See Garcia v. Bank of New York Melon*, 2012 WL 692099, at *2 (N.D. Tex. Mar. 5, 2012) (Fitzwater J.); *Pollett*, 2011 WL 6412051, at *1.

## X.  CLAIM TO REMOVE CLOUD ON TITLE

Defendant next contends that Plaintiff has failed plead a claim to remove cloud on title because she fails to even mention the strength of her title and fails to specify how she has superior title.  (doc. 7-1 at 16–17.)

A suit to quiet title, also known as a suit to remove cloud from title, "relies on the invalidity of the defendants claim to property."  *Gordon v. West Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011).  Such a suit exists "to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right."  *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (quoting *Thomson v. Locke*, 1 S.W. 112, 115 (Tex. 1886)).  In order to prevail on a claim to quiet title, a plaintiff must show that: (1) he has an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable.  *See U.S.*

*Nat. Bank Ass'n v. Johnson*, 2011 WL 6938507, at *3 (Tex. App.— Houston [1st Dist.] Dec. 30, 2011) (citations omitted).  In a suit to quiet title, a plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see [that] he or she has a right of ownership that will warrant judicial interference." *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied).  The plaintiff must recover on the strength of his own title, not on the weakness of his adversary's title.  *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

Regarding the claim to remove cloud from title, the amended complaint alleges that the illegal conduct, acts, and omissions of Defendant constitute the basis to remove the lien and/or deed of trust against the property.  (*See* doc. 6 at 21–2.)  In order to show that she has superior title to the property at issue, Plaintiff argues in her response brief that she is in possession of the deed of trust and that the substitute trustee's deed is clouding her rightfully and properly-owned title.  (*See* doc. 11 at 20–21.)  She has failed, however, to explain how her possession of the deed of trust gives her superior title to the property at issue.  Given the vague and conclusory allegations underlying her claim to remove title on property, the claim should be dismissed for failure to state a claim.

## XI.  TRESPASS TO TRY TITLE

Defendant argues that under Tex. R. Civ. P. 783(e), Plaintiff cannot maintain a suit for trespass to try title while she is still in possession of the property at issue.  (doc. 7-1 at 19.)

"An action in trespass to try title is the method of determining title to lands, tenements, or other real property."  Tex. Prop. Code § 22.001.  "In general, the action of trespass to try title suit is in its nature a suit to recover the possession of land unlawfully withheld from the owner and to which he has the right of immediate possession."  *See Rocha v. Campos*, 574 S.W.2d 233, 236 (Tex.

App.— Corpus Christi 1978, no writ.) (citing Tex. R. Civ. P. 783).  To prevail on a trespass to try title claim, a plaintiff must "usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004).  As with a suit to quiet title, "the plaintiff must recover upon the strength of his own title and not the weakness of the defendant's title." *See Rocha*, 574 S.W.2d at 236 (citing *Hejl v. Wirth*, 343 S.W.2d 226 (1961); *Kauffman v. Shellworth*, 64 Tex. 179 (1885)).

Here, Plaintiff appears to base her trespass to title action on her superior title to the property but has failed to allege any facts showing how she has superior title to the property.  (*See* doc. 6 at 22.)  Moreover, she has failed to allege that she has lost possession of the property to Defendant. (*Id.*) Instead, she claims that a forcible entry and detainer action was filed against her on July 7, 2011, but that it was voluntarily dismissed on July 18, 2011.  (doc. 6 at 10.)  Since Plaintiff has failed to allege that she has lost possession of the property, her claim for trespass to try title fails and should be dismissed with prejudice.

## XII.  VIOLATIONS OF THE RESPA

Defendant also seeks to dismiss Plaintiff's claim under the RESPA for its alleged failure to: (1) notify her of any assignment, sale, or transfer of the servicing of the loan at issue; and (2) respond to her qualified written request, make appropriate corrections in her account, credit late charges or penalties, transmit written notification of such correction, and provide a written explanation or clarification.  (doc. 7-1 at 19–21; doc. 6 at 23.)

### A.  Qualified Written Request

Section 2605 of the RESPA provides that if a loan servicer receives a qualified written

request from the borrower for information relating to the servicing of such loan, the servicer must provide a written response acknowledging the receipt of the correspondence within 20 days unless the action requested is taken within such period. *See* 12 U.S.C. § 2605(e)(1)(A). Additionally, the RESPA requires the servicer to take corrective action within 60 days of receiving the qualified written request, including crediting any late charges or penalties or conducting an investigation and providing the borrower with a written explanation of the reasons for the action and the name and telephone number of an employee of the servicer to whom the borrower can direct any further inquiry on the matter. *Id.* § 2605(e)(1)(B). A plaintiff must allege actual damages resulting from a violation of § 2605. *Id.* § 2605(f)(1)(A); *see also Caballero v. Wells Fargo Bank, N.A.*, 2011 WL 6039953, at *2 (N.D. Tex. July 25, 2011).

Section 2605 defines a qualified written request as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, . . . that includes, or otherwise enables the servicer to identify, the name and account of the borrower; and [that] . . . includes a statement of the reasons for the borrower's belief, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). The qualified written request must be related to the servicing of the loan. *Id.* § 2605(e)(1)(A). "Servicing" includes "any scheduled periodic payments from a borrower" or the "making of . . . payments of principal and interest. . . ." *Id.* § 2605(i)(3).

Plaintiff fails to sufficiently allege a communication meeting the requirements of a qualified written request. She claims that she sent Defendant a letter requesting documents, disputing the amount of the alleged debt, and requesting confirmation that Defendant was a holder in due course of a wet ink original promissory note and deed of trust (doc. 6 at 9.) She does not allege, however,

that the correspondence included information that enabled Defendant to identify the name and account of the borrower, that it included a statement of reasons for the belief that the account was in error, or that it provided Defendant sufficient detail about the information sought.  Nor has Plaintiff alleged any facts giving rise to a reasonable inference that she suffered actual damages from the alleged violation of the RESPA.  She has therefore failed to sufficiently state a claim for relief under § 2605(e) of the RESPA.  *See Akintunji v. Chase Home Fin., L.L.C.*, 2011 WL 2470709, at *2–3 (S.D. Tex. Jun. 20, 2011) (dismissing RESPA claim where plaintiff failed to allege actual damages); *Hill v. Wells Fargo Bank*, NA, 2011 WL 5869730, at *3 (N.D. Tex. Nov. 17, 2011) (dismissing claim under § 2605(e) where plaintiffs failed to sufficiently allege that they sent a communication meeting the requirements of a qualified written request and failed to make any allegation from which the court could conclude that they suffered loss or damages as a result of defendant's failure, if any, to respond to any written requests from plaintiffs).

## B.  Notice of Assignment, Sale, or Transfer

Section 2605 also requires that the borrower be notified when a loan is transferred from one servicer to another. 12 U.S.C. § 2605(c).  As with other RESPA violations, a plaintiff must allege actual damages resulting from a violation of § 2605(c).  *See Akintunji*, 2011 WL 2470709, at *2–3. Apart from her conclusory allegation that she seeks damages, Plaintiff has failed to specify any facts giving rise to a reasonable inference that she suffered actual damages from a violation of § 2605(c). (*See* doc. 6 at 23.)  She has therefore failed to state a plausible claim for relief under § 2605(c) of the RESPA as well.  *See Akintunji*, 2011 WL 2470709, at *2–3.

## XIII.  REQUEST FOR DECLARATORY RELIEF

Defendant moves to dismiss Plaintiff's request for a declaratory judgment because she has

no viable underlying causes of action.  (doc. 7-1 at 21.)

Plaintiff's petition seeks relief under the Texas Declaratory Judgments Act, codified in §§ 37.001–37.011 of the Texas Civil Practice & Remedies Code.  "The Texas act is a procedural, rather than substantive, provision, and would generally not apply to a removed action such as this one." *Brock v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 620550, at *5 (N.D. Tex. Feb. 24, 2012) (citing *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)).  However, in light of removal from state court, the action may be construed as one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.  *See Bell v. Bank of Am. Home Loan Servicing LP*, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012)( holding that "[w]hen a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted to one brought under the federal Declaratory Judgment Act"); *Wilkerson v. Citimortgage*, *Inc.*, 2011 WL 6937382, at *9 (N.D. Tex. Oct. 24, 2011) (construing *pro se* complaint in light of removal to seek a declaratory judgment action under the federal Declaratory Judgment Act).

The federal Act allows a federal court to declare the rights and legal relations of any interested party.  *See id.*  The availability of a declaratory judgment depends upon the existence of a judicially remediable right, however.  *Id.* (*citing Schilling v. Rogers*, 363 U.S. 666, 677 (1960)).  Here, Plaintiff's request for declaratory relief is based on her viable claims for breach of contract, negligent misrepresentation, fraud, fraud in the inducement, negligence, trespass to personalty, and unjust enrichment/quantum meruit.  Accordingly, Plaintiff's request for declaratory relief should not be dismissed.  *See Watson* v. *Citimortgage, Inc.*, 2011 WL 4526980, at *9–10 (E.D. Tex. Sept. 30, 2011) (refusing to dismiss the plaintiff mortgagors' declaratory judgment action because plaintiffs had stated claims against lender for a Texas Debt Collection Practices Act violation).

## XIV.  RECOMMENDATION

Defendant's motion to dismiss should be **GRANTED in part**, and **DENIED in part**.[7]

Plaintiff's claims for the breach of the promise to modify, her promissory estoppel claim, her DTPA

claim, her wrongful foreclosure claim, her claim to remove cloud on title, her claim for trespass to

try title, and her claim for violations of the RESPA should be **DISMISSED WITH PREJUDICE**.

All of her remaining claims should be allowed to proceed.

**SO RECOMMENDED on this 12th day of March, 2012.**

_Irma Carrillo Ramirez_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_Irma Carrillo Ramirez_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[7] As an alternative to granting Defendant's motion to dismiss, Plaintiff asks the court to grant her an opportunity to amend.  Because only partial dismissal has been recommended, her request should be denied at this time without prejudice to the filing of a later motion for leave to amend that complies with the applicable rules of civil procedure and local rules.  (doc. 11 at 24.)